NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| EDWIN PAUL GANT, | : | |
| | : | |
| Plaintiff, | : | Civil No. 20-01727 (RBK/KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DEAN ANTHONY RAGONE, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon several motions: (1) Defendant's Motion to Dismiss (Doc. 5); (2) Plaintiff's Motion to Recuse the Honorable Judge Robert B. Kugler and Transfer Case Back to State Court (Doc. 8); (3) Defendant's Motion to Strike (Doc. 20); (4) Plaintiff's Motion for Partial Judgment on the Pleadings (Doc. 24); and (5) Plaintiff's Cross Motion for Sanctions (Doc. 31).

## I.      BACKGROUND

This case arises out of a contract dispute. Plaintiff, Edwin Gant, is a lawyer and author. Gant alleges that in January 2016 he met with the Defendant, Dean Ragone at a bar in Philadelphia to watch an NFL game. (Compl. ¶3.) At the bar, Ragone allegedly asked Gant if he would write Ragone's biography. (*Id.* ¶4.) Gant agreed to write the biograph. (*Id.* ¶5.) No other details were discussed regarding the purported agreement. Following this conversation, Gant reread two entirely unrelated novels that he had previously written but had not published. (*Id.* ¶¶8–12.) Gant selected two chapters, revised those chapters, and then mailed the chapters to Ragone. (*Id.*) Gant

1

alleges that this revision process took him fifty hours, and his hourly rate for his legal services is $400 per hour. (*Id.* ¶¶13–14.)

In February 2016, Ragone texted Gant and told him that he no longer wanted Gant to write his biography. (*Id.* ¶15.) Gant thereafter brought the current suit, alleging causes of action for the following: (1) promissory estoppel; (2) equitable estoppel; (3) quasi-contract/implied and constructive contract; (4) unjust enrichment/quantum meruit/restitution; (5) oral contract; (6) punitive damages; (7) theft of services; (8) specific performance; (9) invasion of privacy; and (10) intentional infliction of emotional distress. Upon receiving the Complaint, Ragone filed a Motion to Dismiss. (Doc. 5, "Mot. to Dismiss.") Before any proceedings occurred before the Court, Gant filed a Motion to Recuse the Honorable Judge Robert B. Kugler. (Doc. 8, "Mot. to Recuse.") In that same Motion, Gant also requested that the case be transferred back to state court. (*See id.*) Ragone then filed a Motion to Strike (1) the entire Complaint and (2) portions of Gant's Motion to Recuse. (Doc. 20, "Mot. to Strike.") Gant then filed a Motion for Partial Judgment on the Pleadings, even though Ragone had not yet answered the Complaint. (Doc. 24, "Mot. for J. on the Pleadings.") Gant then filed a Cross-Motion for Sanctions against Ragone. (Doc. 31, "Mot. for Sanctions".)

## II.   LEGAL STANDARD

### A.  Choice of Law

Because this Court hears this case pursuant to its diversity jurisdiction, it must apply state substantive law and federal procedural law. *Chaimberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir. 2000). The parties dispute which state's substantive laws should apply. Ragone believes that Florida law should apply, but notes that "Florida and New Jersey law are indistinguishable for the issues" raised in Gant's Complaint. (Mot. to Dismiss at 6.) Gant believes that either New Jersey

2

or Pennsylvania law should apply because "Florida . . . has no significant involvement or connection to this case." (Opp. to Mot. to Dismiss at 4–5.)

To determine which state's substantive law applies, a federal court exercising diversity jurisdiction will apply the conflict of law rules of the forum state. *Bayer Chems. Corp. v. Albermarle Corp.*, 171 Fed. App'x 392, 398 (3d Cir. 2006). New Jersey applies different conflict of law rules to contract claims and tort claims. Because Gant's Complaint alleges both contract and tort claims, the Court analyzes Gant's claims under each standard separately.

### 1. Contract Claims

New Jersey employs a two-step test to determine which substantive law governs the interpretation of a contract. First, the court examines "whether there is a conflict between the laws of the various jurisdictions that have an interest in the matter." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 470 (N.J. 2008). "[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (internal quotation omitted). If there is no conflict, the analysis ends there. Second, if there is a conflict, the court must determine which state has the most significant relationship to the claim at issue by weighing the factors in the applicable section of the Restatement (Second) of Conflict of Laws. *Id.* (internal citation omitted).

Gant alleges claims for promissory estoppel, equitable estoppel, quasi-contract, unjust enrichment, breach of oral contract, specific performance, and punitive damages. Each of these claims arise out of a purported contract between Gant and Ragone. The purported contract was entered into in Pennsylvania, Gant is a New Jersey citizen, and Ragone is a Florida citizen. Thus, New Jersey, Pennsylvania, and Florida are the potential jurisdictions holding an interest in this matter. Accordingly, under the first step of the analysis, the Court will consider whether there is a conflict between the laws of New Jersey, Pennsylvania, and Florida with respect to Gant's claims.

### Breach of Contract

First, for the breach of contract claim, the Court finds that there is no conflict between New Jersey, Pennsylvania, and Florida law. Under New Jersey law, to state a claim for breach of contract, a plaintiff must plead that (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and (3) as a result, the plaintiff sustained damages. *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.,* 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's,* 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)). To establish that a valid contract exists, a plaintiff must plead the following: (1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms. *See id.*

Pennsylvania law requires a plaintiff to plead the same elements. *See, e.g.*, *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir, 2003) ("Under Pennsylvania law, a party alleging breach of contract 'must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'") (internal citation omitted). Florida law also requires proof of the same elements. *See, e.g.*, *Vega v. T–MobileUSA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009) ("For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach . . . . To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.") (internal citation and quotation omitted).

Moreover, each of these states require a plaintiff to plead the contract's essential terms, particularly a price term, in order to establish that there is a valid contract. *See, e.g.*, *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) ("New Jersey law deems the price term, i.e., the amount of

compensation, an essential term of any contract."); *Lombardo v. Gasparini Excavating Co.,* 123 A.2d 663, 666 (Pa. 1956) ("The essential terms of a contract . . . include the time and manner of performance and price or other consideration."); *Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. Ct. 2006) ("[w]here . . . there is no agreement or even a discussion as to *any* of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to *reasonably* believe that it could be enforceable in an action at law."); *Uphoff v. Wachovia Securities, LLC*, No. 09-80420, 2009 WL 5031345 (S.D. Fla. Dec. 15, 2009) (applying Florida law, "to state a cause of action for breach of an oral contract, a plaintiff must allege that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open . . . . An example of an essential term is price") (internal citation and quotation omitted). Accordingly, there is no conflict between the relevant breach of contract laws for New Jersey, Pennsylvania, and Florida.

### Promissory Estoppel

Under New Jersey law, a plaintiff must plead the following to state a claim for promissory estoppel: "(1) the promisor made a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely thereon; (3) the promisee did in fact reasonably rely on the promise; and (4) detriment of a definite and substantial nature was incurred in reliance on the promise." *Madison Fin., LLC v. Hunts Point Co-op. Mkt.,* No. 01-3830, 2008 WL 724362, at *13 (D.N.J. March 17, 2008) (internal citations and quotations omitted). The requisite elements under Pennsylvania and Florida law are nearly identical. *See, e.g.*, *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. 2009) ("To establish promissory estoppel, the plaintiff must prove that: (1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the

promise; and (3) injustice can be avoided only by enforcing the promise."); *Morse, LLC v. Un. Wisconsin Life Ins. Co.*, 365 F. Supp. 2d 1296, 1300 (S.D. Fla. 2005) (under Florida law, promissory estoppel claims require that "plaintiff detrimentally relied on the defendant's promise, that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance by the plaintiff, and that injustice can only be avoided by enforcement of the promise."). Accordingly, the Court finds there is no conflict between the relevant promissory estoppel laws for New Jersey, Pennsylvania, and Florida.

### Equitable Estoppel

None of the potential jurisdictions recognize equitable estoppel as an independent cause of action. *See, e.g.*, *Bava v. Hamilton Farm Golf Club*, No. 08-5473, 2009 WL 2778108, at *3 n.5 (D.N.J. Aug. 28, 2009) (applying New Jersey law and stating "equitable estoppel is generally invoked to either bar a party from asserting certain legal positions in litigation or bar a governmental entity from enforcing certain regulations, where doing so would be unfair. It is not generally an independent cause of action and basis for money damages for breach of contract."); *Peluso*, 970 A.2d 530, 533 (Pa. 2009) (recognizing that equitable estoppel is not an independent cause of action); *Flagship Resort Dev. Corp. v. Interval Intern., Inc.*, 28 So. 3d 915, 923 (Fla. Dist. Ct. 2010) ("equitable estoppel is not a cause of action, but an affirmative defense."). Accordingly, the Court finds that there is no conflict between the equitable estoppel doctrines under New Jersey, Pennsylvania, and Florida law.

### Unjust Enrichment/Quasi-Contract

Under New Jersey law, to state a claim for unjust enrichment, a plaintiff must demonstrate "both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 641 A.2d 519, 519 (1994). The requisite elements to

6

state a claim under Pennsylvania and Florida law are the same. *See, e.g.*, *Lackner*, 892 A.2d at 34 (the elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value"); *Am. Marine Tech., Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1077 (S.D. Fla. 2019) (applying Florida law, the elements for a claim of unjust enrichment are "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof"). Accordingly, there is no conflict between the relevant unjust enrichment doctrines under the law of New Jersey, Pennsylvania, and Florida.

### Specific Performance

None of the potential jurisdictions recognize specific performance as a stand-alone cause of action. *See, e.g.*, *ADP, LLC v. Capote*, No. 15-1355, 2015 WL 13447655, at *1 n.2 (D.N.J. July 28, 2015) (applying New Jersey law and stating that "specific performance is a remedy, and not an independent cause of action."); *McHolme/Waynesburg, LLC v. Wal–Mart Real Estate Bus. Trust,* No. 08–961, 2009 WL 1292808, at *3 (W.D. Pa. May 7, 2009) (applying Pennsylvania law and rejecting claim for specific performance as stand-alone claim); *Bay Club, Inc. v. Brickell Bay Club, Inc.*, 293 So. 2d 137, 138 (Fla. Dist. Ct. 1974) (recognizing that specific performance is an equitable remedy for a breach of contract, not an independent cause of action). As such, there is no conflict between the laws of Florida, Pennsylvania, and New Jersey with regards to the specific performance claim.

### Punitive Damages

Likewise, there is no conflict between the laws of New Jersey, Pennsylvania, and Florida with regards to the request for punitive damages. In each of the states, punitive damages are generally not available for breach of contract claims. *See, e.g.*, *Thomas v. Ne. Univ.,* No. 11-3905, 2011 WL 3205301, at *2 (D.N.J. July 27, 2011) (applying New Jersey law); *Cinalli v. Kane*, 191 F. Supp. 2d 601, 606 (E.D. Pa. 2002) (applying Pennsylvania law); *Conn. Gen. Life Ins. Co. v. Jones*, 764 So. 2d 677, 682 (Fla. Dist. Ct. 2000). Accordingly, the Court finds there is no conflict regarding the punitive damage laws in the potential jurisdictions.

In sum, the Court finds that no conflicts exist between the laws of New Jersey, Pennsylvania, and Florida for the breach of contract, promissory estoppel, equitable estoppel, unjust enrichment, specific performance, and punitive damages claims. In the absence of a conflict, the Court applies the law of the forum state. *See Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007). Therefore, the Court will apply New Jersey law to the claims arising out of the alleged breach of contract.

### 2. Tort Claims

For tort claims, the Court must consider four factors to determine what jurisdiction's laws apply: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Weisbrot v. Schwimmer,* No. 97–2711, 2007 WL 2683642, at *3 (D.N.J. Sept. 7, 2007) (citing *Lebegern v. Forman,* 471 F.3d 424, 428–29 (3d Cir. 2006)). Gant pleads claims for invasion of privacy and intentional infliction of emotional distress. In support of these claims, Gant pleads that "defendant engaged in an illegal and tortious investigation of plaintiff's private life, including . . . his personal bankruptcy, foreclosure on his residence, a collection lawsuit[,] and personal and

confidential communications[.]" (Compl. ¶68.) The intentional infliction of emotional distress claim is premised on the invasion of privacy claim. (*See id.* ¶72.) Gant is a New Jersey citizen, and it is his personal information that Ragone allegedly invaded. (*See id.* ¶¶1, 72) Because Gant's personal information is the center of the tort claims, the Court finds New Jersey law to be most applicable. Accordingly, based on this information, the Court finds that New Jersey law should govern the tort claims.

In sum, the Court will apply federal procedural law and New Jersey substantive law to determine the current dispute.

### B.  Motion to Recuse

Under 28 U.S.C. § 144 a district judge is required to recuse himself or herself from a proceeding when the judge has "a personal bias or prejudice either against [the moving party] or in favor of any adverse party." A party moving for recusal must submit a single affidavit in support of the motion which "state[s] the facts and the reasons for the belief that bias or prejudice exists." *Id.* The judge who is targeted by the recusal motion must then decide whether the moving party's affidavit passes a threshold "sufficiency test" that would support a charge of bias or prejudice. *Mims v. Shapp,* 541 F.2d 415, 417 (3d Cir. 1976). This inquiry involves assuming the truth of the facts alleged and considering whether a reasonable person would "conclude that a personal as distinguished from a judicial bias exists." *Id.*; *United States v. Dansker,* 537 F.2d 40, 53 (3d Cir. 1976). The court must accept all facts alleged in the affidavit as true, but need not accept the moving party's conclusions, conjecture, speculation, or surmises. *Cooney v. Booth*, 262 F. Supp. 2d 494, 501 (E.D. Pa. 2003).

### C.  Motion to Remand

Under 28 U.S.C. § 1441(a), a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. *Id.* A case that is removed shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Where a complaint does not raise a question of federal law, a district court may properly exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and diversity exists among the adverse parties. *See* 28 U.S.C. § 1332(a). There is diversity among parties when the action arises between citizens of different states. *Id.*

### D.  Motion to Dismiss

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### E.  Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is treated the same as a motion to dismiss under Rule 12(b)(6). *Turbe v. Gov't of V.I.,* 938 F.2d 427, 428 (3d Cir. 1991). The court must accept all allegations in the complaint as true and must draw all inferences in favor of the nonmoving party. *Id.; Gallas v. Supreme Ct. of Pa.,* 211 F.3d 760, 768 (3d Cir. 2000). The court "may grant such a motion only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir. 2004) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).

### F.  Motion to Strike

Under Rule 12(f), a party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court has "considerable discretion" in deciding a Rule 12(f) motion. *Tonka Corp. v. Rose Art Indus., Inc.,* 836 F. Supp. 200, 217 (D.N.J. 1993). However, motions to strike are disfavored and usually will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *River Road Dev. Corp. v. Carlson Corp. Ne.,* No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). A motion to strike is not a proper way to dismiss part of a complaint for legal insufficiency. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 391 (3d ed.2004).

### G.  Motion for Sanctions

Under Federal Rule of Civil Procedure 11, sanctions are warranted "only in the exceptional circumstances where a claim or motion is patently unmeritous or frivolous." *Didonato v. Imagine*

*One Tech. & Mgmt., Ltd*, No. 15-8377, 2016 WL 6584911, at *7 (D.N.J. Nov. 7, 2016) (quoting *Goldenberg v. Indel, Inc.*, No. 09–5203, 2011 WL 1134454, at *2 (D.N.J. Mar. 25, 2011)); *see also Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). A court should only impose sanctions in those rare circumstances where the evident frivolousness of a claim or motion amounts to an "abuse[] of the legal system." *Didonato*, 2016 WL 6584911, at *7 (citing *Doering*, 857 F.2d at 194).

## III.   DISCUSSION

### A.  Motion to Recuse

The Court first evaluates Gant's recusal motion. Gant moves for the Court to recuse itself because Gant believes that this Court is biased towards Ragone's friend and personal attorney, Anthony Brady.[1] Gant states that Brady has "appeared before Judge Kugler many times," and asserts that this Court and Brady are "quite 'chummy.'" (Mot. to Recuse at 15.) Gant also states that "Judge Kugler treats Brady with the utmost respect." (*Id.*) Gant argues that "[s]omewhere behind the scenes, I have no doubt in my mind that Brady and/or Ragone and/or some other person acting [on] Ragone's behalf has done something to get the instant Motion to Dismiss assigned (i.e. steered) to Judge Kugler." (*Id.* at 16.) Based on these allegations, Gant concludes (1) that he has "been 'set-up' by whoever assigned Ragone's Motion to Dismiss to Judge Kugler"; (2) that "Ragone has been accommodated as . . . the motion will be decided on the papers"; and (3) ultimately, "Judge Kugler will dismiss [Gant's] complaint and rule in favor of Ragone not because of the facts and merits of the case, but simply because of favoritism[.]" (*Id.*)

The Court finds that Gant's affidavit in support of his motion fails to pass the "sufficiency test" for several reasons. First, Gant's entire affidavit is based on conclusory allegations with no

---

[1] The Court notes that Brady does not appear to be representing Ragone in this case. Rather, the attorney to be noticed is Stephen Cristal of Cristal Law Firm LLC.

facts to support a finding of bias or prejudice meriting recusal. Second, Gant does not attest to any facts within his personal knowledge, and instead his allegations are based on conjecture and unfounded belief. To the extent that Gant believes it is suspicious that the instant motion was referred to this Court from Magistrate Judge Williams, the Court reminds Gant that, in this District, Magistrate Judges handle all non-dispositive, pre-trial matters. L. Civ. R. 72.1(a)(1). Ragone's Motion to Dismiss, which seeks to terminate the entire Complaint, is undoubtedly a dispositive motion. Therefore, Gant's conclusion that "whoever assigned the instant Motion to Dismiss may be dirty and may have committed fraud" is entirely unfounded. (Mot. at 16.) Moreover, to the extent Gant believes that someone "has done something to get the instant Motion to Dismiss assigned (i.e. steered) to Judge Kugler," this conclusion is also unfounded. (*Id.*) In the District of New Jersey, judges are randomly chosen by a computer database, similar to a deck of cards.[2] Neither Brady, Ragone, nor the Clerk's Office have any discretion in the assignment of cases. Additionally, to the extent that Gant believes the Court is biased because it is deciding the Motion to Dismiss on the papers, the Court refers Gant to Local Civil Rule 78.1. Under this Rule, "[a]ll motions and other applications will be decided on the papers submitted" unless a party requests oral argument and the request is granted by the judge. Ragone specifically waived his right to oral argument on the Notice of Motion to Dismiss the Complaint. (*See* Doc. 5.) Accordingly, the fact that there is no oral argument on the Motion to Dismiss does not support a finding that the Court is biased. Finally, because Brady does not represent Ragone in this matter, any allegations about Brady's prior appearances before this Court are both irrelevant and immaterial.

---

[2] *General FAQs*, United States District Court, District of New Jersey, (last accessed Oct. 29, 2020) (available at https://www.njd.uscourts.gov/court-info/faq/common?page=1).

In sum, the Court finds that Gant's affidavit fails to pass the sufficiency test as it does not state any facts that would support a finding of bias. Accordingly, the Motion to Recuse is **DENIED**.

### B. Motion to Remand

In his Motion to Recuse, Gant additionally makes a request for the Court to "transfer the case back to state court." (Mot. to Recuse at 1.) Gant does not cite to any authority to support a request to transfer to state court. However, the Court will treat this request as a motion to remand. Gant seems to challenge this Court's ability to exercise diversity jurisdiction over this case. Gant alleges that Ragone "is a New Jersey resident and/or . . . owns a home" located in Haddonfield, New Jersey. (*Id.* at 2.) Therefore, Gant argues that Ragone is a New Jersey citizen, and there is no diversity jurisdiction in this case. (*See id.*)

In a diversity action, the party asserting diversity jurisdiction bears the burden of proof. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936); *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir. 2004). A party generally meets this burden by proving diversity of citizenship by a preponderance of the evidence. *McNutt,* 298 U.S. at 189. Because Ragone removed the action from state court and is the party asserting diversity jurisdiction, Ragone bears the burden of proof to establish diversity.

"A natural person is deemed to be a citizen of the state where he [or she] is domiciled." *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). "[T]he domicile of an individual is his true, fixed[,] and permanent home and place of habitation. It is the place to which whenever he is absent, he has the intention of returning." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (citing *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). In determining an individual's domicile, a court considers several factors, including "declarations,

exercise of political rights, payment of personal taxes, house of residence, and place of business." *Krasnov v. Dinan,* 465 F.2d 1298, 1301 (3d Cir. 1972) (quotation omitted). The Court may also consider other factors, including the location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration. 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed. 2005).

Here, Ragone has offered sufficient proof to establish by a preponderance of the evidence that he is a Florida citizen. Ragone asserts that he has owned a condominium in Florida since 2013 and this has been his permanent residence since 2014. (Opp. to Mot. to Recuse at 2–3; Certification ¶¶ 3–5.) Ragone has possessed a Florida driver's license since 2010 and has been registered to vote in Florida since 2015. (Certification ¶¶7–9.) Gant's only argument to contradict this evidence is the fact that Ragone owns property in New Jersey. However, property ownership, without more, is not enough to establish domicile in a state. *See, e.g.*, *Dicke v. Jialin Li,* No. 16-2163, 2017 WL 1011219, at *7 (D.N.J. Mar. 15, 2017). In sum, the Court finds that Ragone has advanced sufficient evidence to establish that he is domiciled in Florida, and Gant has failed to adequately refute that evidence. Accordingly, the Court finds that diversity jurisdiction exists. As such, the request to remand the case, or transfer the case back to state court, is **DENIED**.

### C.  Motion to Dismiss

Ragone moves to dismiss each of the causes of action in Gant's Complaint. Gant pleads ten causes of action: (1) breach of oral contract; (2) promissory estoppel; (3) equitable estoppel; (4) quasi-contract/implied and constructive contract; (5) unjust enrichment/quantum meruit/restitution; (6) punitive and/or exemplary damages; (7) theft of services; (8) specific

performance; (9) invasion of privacy; and (10) intentional infliction of emotional distress. The Court will address each claim in turn. As discussed *supra*, the Court applies New Jersey law.

### 1. Breach of Oral Contract

First, Ragone contends that the breach of oral contract claim should be dismissed because the parties never agreed on the "essential terms of the contract." (Mot. to Dismiss at 10.) Under New Jersey law, to state a cause of action for breach of contract, a plaintiff must plead the following: (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and (3) as a result, the plaintiff sustained damages. *Sheet Metal Workers Int'l Ass'n Local Union No. 27*, 737 F.3d at 900 (internal citations omitted). To establish that a valid contract exists, a plaintiff must plead the following: (1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms. *Id.*

With regard to the fourth element, a contract is only enforceable if it is "sufficiently definite in its terms [so] that the performance to be rendered by each party can be reasonably ascertained." *Savarese v. Pyrene Mfg. Co.*, 89 A.2d 237, 238 (N.J. 1952). "If the parties do not agree to one or more of the essential terms of a purported agreement, they have failed to create an enforceable agreement." *MDC Inv. Prop., L.L.C.*, 44 F. Supp. 2d at 698–99 (internal citations omitted). Indeed, the Third Circuit has held that "New Jersey law deems the price term, i.e., the amount of compensation, an essential term of any contract." *Baer*, 392 F.3d at 619 (citing *MDC Inv. Prop., L.L.C.*, 44 F. Supp. 2d at 689). In the absence of "an agreement as to the manner or method of determining compensation the purported agreement is invalid." *Id.*

Gant pleads that "defendant orally/verbally made an offer, to wit, a promise to the plaintiff to have the plaintiff write his biography." (Compl. ¶4.) In reply, "plaintiff agreed orally/verbally to write the biography of the defendant thereby constituting an offer and acceptance." (*Id.*) Gant

alleges that in February 2016, Ragone sent Gant a "text which in effect stated that he had changed his mind and no longer wanted the plaintiff to write his biography[.]" (*Id.* ¶15.) Finally, Gant pleads that "[b]ased upon the fateful offer/promise made by the defendant on or about January 16, 2016, which the plaintiff agreed to, the plaintiff has sustained great financial detriment due to the plaintiff's reasonable reliance upon said offer/promise." (*Id.* ¶23.) This is the extent of Gant's allegations surrounding the purported contract. Gant does not allege any facts to demonstrate that the parties agreed on a price term, agreed how Gant was to be compensated, or agreed on a method for determining compensation. Gant does allege that he spent "approximately fifty (50) hours" and that his hourly rate is $400.00 per hour. But Gant admits that this $400 "is how the plaintiff values his time and effort" for his legal services—not his biographical writing. (*Id.* ¶14.) Further, and more importantly, Gant fails to plead that there was a meeting of the minds between Ragone and Gant and that Ragone agreed to compensate Gant $400 an hour for his time spent writing the biography. Without this essential price term, the Court cannot find that the purported contract was valid. Because a valid contract is necessary to plead a breach of contract claim, the motion to dismiss the oral contract claim is **GRANTED**.

### 2. Promissory Estoppel

Ragone moves to dismiss the promissory estoppel claim. Ragone asserts that Gant failed to allege that Ragone "made a clear and definite promise." (Mot. to Dismiss at 6–7.) As such, "[f]ar too many details of the alleged transaction have not been addressed" and "there is nothing in Ragone's purported promise that should lead" Gant to believe that he would pay "$400.00 per hour for preparing a chapter of [Gant's] book for him to read." (*Id.*)

To state a claim for promissory estoppel under New Jersey law, a plaintiff must establish four elements: (1) the promisor made a clear and definite promise; (2) the promise was made with

the expectation that the promisee would rely thereon; (3) the promisee did in fact reasonably rely on the promise; and (4) detriment of a definite and substantial nature was incurred in reliance on the promise. *Madison Fin., LLC,* 2008 WL 724362, at *1308 (internal citations omitted).

Gant pleads only the following allegations to support his promissory estoppel claim: "he reasonably relied on the promise of the defendant to his great financial detriment," "defendant's promise was the type which the defendant should have reasonably expected to induce action," "plaintiff actually took action in reliance on defendant's promise," and "injustice can be avoided only [by] enforcing the promise." (Compl. ¶31.) Gant merely recites the legal requirements for pleading a claim of promissory estoppel but fails entirely to plead any factual allegations to support these conclusions.

In his Opposition, Gant argues new facts that are absent from his Complaint. Gant argues that Ragone continuously communicated with Gant about his novels. (Opp. to Mot. to Dismiss at 7.) Gant additionally references text exchanges between the parties regarding the biography. (*Id.*) Gant argues that together these facts establish reliance. However, on a motion to dismiss the Court may only rely on the allegations included in the Complaint. *See, e.g.*, *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Based solely on the Complaint, Gant has not established a cause of action for promissory estoppel as he fails to establish that Ragone made a clear and definite promise or that Gant incurred a substantial detriment due to his reliance. Accordingly, the motion to dismiss the promissory estoppel claim is **GRANTED**.

### 3.  Equitable Estoppel

Next, Ragone argues that the equitable estoppel claim should be dismissed. Under New Jersey law, equitable estoppel is not recognized as an independent claim for relief. *See Bava*, 2009 WL 2778108, at *3 n.5 (applying New Jersey law and stating "equitable estoppel is generally

invoked to either bar a party from asserting certain legal positions in litigation or bar a governmental entity from enforcing certain regulations, where doing so would be unfair. It is not generally an independent cause of action and basis for money damages for breach of contract.") Because there is no separate cause of action for equitable estoppel, the motion to dismiss the equitable estoppel claim is **GRANTED**.

### 4. Quasi-Contract and Unjust Enrichment

Ragone next moves to dismiss Gant's quasi-contract and unjust enrichment claims. The Court addresses these claims together because "[u]njust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." *Nat'l Amusements, Inc. v. N.J. Turnpike Auth.,* 619 A.2d 262, 267 (N. J. Super. Ct. Law Div. 1992), *aff'd,* 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994). There are two basic elements to a claim based on unjust enrichment. A plaintiff must demonstrate "both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp.,* 641 A.2d at 519. New Jersey law also "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (internal citation and quotation omitted).

Gant seems to argue that he is entitled to recover on a basis of unjust enrichment for the time he spent rewriting chapters of his own novel. Gant alleges that he reviewed two of his novels, which was "extremely time-consuming and involved the plaintiff re-reading both" books. (Compl. ¶¶8–9.) Gant then "select[ed] the chapter he would forward to the defendant" and "took great pains (e.g. a lengthy time period) to revise said chapter for the reading pleasure of the defendant." (*Id.* ¶10.) Notably, Gant does not allege that Ragone asked Gant to rewrite these chapters or otherwise

requested Gant to expend time on this project. Nor does Gant plead any allegations to establish that the rewrite of his novel was in any way related to the conversations related to Ragone's biography. Nevertheless, Gant seemingly attempts to recover damages for the fifty hours he spent rewriting the novel and at a rate of $400 per hour. (*Id.* ¶¶13–14.) Gant concludes that "the defendant has been unjustly enriched in the instant case by the benefits conferred upon him by the plaintiff and by the labor and services performed in defendant's behalf by the plaintiff." (*Id.* ¶43.) Similarly, in support of his constructive contract claim, Gant concludes that "it would be inequitable for the defendant to retain the benefit conferred to him by the plaintiff without a corresponding exchange of value from defendant to plaintiff based upon the facts as stated aforesaid." (*Id.* ¶39.)

Ragone argues that the unjust enrichment claim should be dismissed because "[t]here is no evidence that Ragone requested or desired to read a sample of plaintiff's novels." (Mot. to Dismiss at 9.) The Court agrees. Gant has failed to plead any connection between his decision to rewrite chapters from his novel and any benefit Ragone received. Additionally, Gant does not plead that he expected to receive renumeration at the time he rewrote his chapters. Because Ragone did not receive a benefit, the Court cannot find that there is any basis to impose a constructive contract or to find that Ragone has been unjustly enriched. Accordingly, the Court **GRANTS** the motion to dismiss the claims for unjust enrichment and quasi-contract.

### 5. Punitive Damages

Ragone next challenges Gant's claim for punitive damages. To succeed on a punitive damages claim, a plaintiff must show that the defendant acted with "(1) actual malice, which is nothing more or less that intentional wrongdoing-an evil-minded act; or (2) an act accompanied by a wanton and willful disregard of the rights of another." *Sec. Aluminum Window Mfg. Corp. v.*

*Lehman Assoc.,* 260 A.2d 248, 251 (N.J. Super. Ct. App. Div. 1970). Based on this standard, under New Jersey law, punitive damages are generally not available for breach of contract claims. *Thomas*, 2011 WL 3205301, at *2. Because Gant's request for punitive damages is predicated on the alleged breach of contract, and because punitive damages are not available for breach of contract claims, the Court **GRANTS** the motion to dismiss the claim for punitive damages.

### 6.  Theft of Services

Gant also pleads a claim for theft of services in violation of N.J. Stat. Ann. § 2C:20-8(a). Section 2C:20-8(a) is a New Jersey state criminal statute criminalizing a person "obtain[ing] services which he knows are available only for compensation, by deception or threat . . . or through fraudulent statements." "Generally, courts will not imply a private right of action from a state criminal statute." *Isaac v. Sigman*, No. 16-5345, 2017 WL 2267264 (D.N.J. May 24, 2017); *see also In re Resolution of State Comm'n of Investigation*, 108 N.J. 35, 41 (1987); *Wilson v. Somerset Cty. Prosecutor's Office*, No. 15–6035, 2016 WL 1090811, at *3 (D.N.J. Mar. 21, 2016); *Alston v. Monmouth Cty. Prosecutor's Office*, No. 12–5633, 2014 WL 1095716, at *22 (D.N.J. Mar. 19, 2014). Courts only infer a private cause of action where the criminal statute and its legislative intent clearly contain such an implication. *See In re Resolution of State Comm'n of Investigation*, 527 A.2d at 854; *see also Mannarino v. Deutsche Bank Nat. Trust Co.*, No. 14–7771, 2015 WL 5383995, at *7 (D.N.J. Sept. 14, 2015).

Nothing in the statute indicates that Section 2C:20-8(a) was intended to authorize a civil cause of action. Moreover, the Court is not aware of any state or federal court that has implied a private cause of action under N.J. Stat. Ann. § 2C:20-8. The Court declines to create a civil cause of action under this statute now. Accordingly, the Court **GRANTS** the motion to dismiss the theft of services claim.

### 7.   Specific Performance

Gant alleges a separate cause of action for specific performance. However, specific performance is an equitable remedy for breach of contract, not an independent cause of action. *See Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 722 (D. Del. 2011); *Nationwide Life Ins. Co. v. Franklin Mills Assocs. Ltd. P'ship*, No. 3:10-CV-1050-J-20JBT, 2014 WL 4722523, at *3 (E.D. Pa. Sept. 23, 2014). Accordingly, the Court will construe this claim as a request for equitable relief for the breach of contract claim. *See McHolme/Waynesburg, LLC v. Wal–Mart Real Estate Bus. Trust,* No. 08–961, 2009 WL 1292808, at *3 (W.D. Pa. May 7, 2009) (construing count for specific performance as request for equitable remedy for breach of contract). Because the Court has dismissed the breach of contract claim, the Court similarly **GRANTS** the motion to dismiss the request for specific performance.

### 8.   Invasion of Privacy

Ragone next moves to dismiss the invasion of privacy claim. Under New Jersey law, to state a claim for intrusion upon one's seclusion or private affairs, a plaintiff must allege sufficient facts to demonstrate that (1) his or her solitude, seclusion, or private affairs were intentionally infringed upon and that (2) this infringement would highly offend a reasonable person. *See Bisbee v. John C. Conover Agency Inc.,* 452 A.2d 689 (N.J. App. Div. 1982). "[E]xpectations of privacy are established by general social norms" and must be objectively reasonable—a plaintiff's subjective belief that something is private is irrelevant. *White v. White,* 781 A. 2d 85, 86 (N.J. Super. Ct. Ch. Div. 2001).

Ragone argues that the invasion of privacy claim should be dismissed because the issues that Gant alleges are private "are part of the public record and plaintiff has no expectation of privacy in matters that are part of the public record." (Mot. to Dismiss at 13.) Gant alleges that

"defendant engaged in an illegal and tortuous investigation of plaintiff's private life including but not limited to his personal bankruptcy, foreclosure on his residence, a collection lawsuit[,] and personal and confidential communications obtained by the defendant from a third-party who is/was an attorney that had previously advised the plaintiff on the aforesaid matters." (Compl. ¶68.) Gant additionally alleges that "defendant also has committed other and/or subsequent acts and/or omissions which constitute an invasion of plaintiff's privacy to be revealed during discovery." (*Id.* ¶69.)

The Court recognizes that some of the matters that Gant alleges Ragone invaded are matters of public record, such as his personal bankruptcy and his home foreclosure. *See In re Joyce*, 399 B.R. 382, n. 1 (D. Del. 2009) ("Papers filed in a bankruptcy case and the dockets of a bankruptcy court are public record."); *Harrell v. Wells Fargo Bank, N.A.*, No. 19-01417, 2019 WL 7207490, at *2 n.4 (D.N.J. Dec. 27, 2019) (recognizing that foreclosure actions are matters of public record). However, the Court recognizes that Gant does plead that Ragone intruded upon confidential communications between Gant and his former attorney. Assuming these allegations as true, as the Court must on a motion to dismiss, the Court finds that Gant sufficiently states a claim for invasion of privacy. Accordingly, the motion to dismiss the invasion of privacy claim is **DENIED**.

### 9.  Intentional Infliction of Emotional Distress

Finally, Ragone moves to dismiss the intentional infliction of emotional distress claim. A plaintiff must plead four elements to establish a claim for intentional infliction of emotional distress under New Jersey law: "(1) that defendant acted intentionally or recklessly; (2) that defendant's conduct was extreme and outrageous; (3) that defendant's actions were the proximate cause of the plaintiff's distress; and (4) that the emotional distress suffered by the plaintiff was severe." *Hill v. N.J. Dep't of Corr. Comm'r Fauver*, 776 A.2d 828 (N.J. Super. Ct. App. Div. 2001)

(citing *Buckley v. Trenton Saving Fund Soc'y,* 544 A.2d 857 (N.J. 1988)). Gant pleads only that Ragone's actions "constitute reckless or intentional acts . . . which are/were extreme and outrageous," and "the plaintiff has suffered severe emotional distress as a direct and proximate result."

The Court finds that Gant's allegations amount to a mere formulaic recitation of the elements of an intentional infliction of emotional distress claim. Gant fails to plead any facts to support these conclusions. Absent these facts, the claim cannot stand. Accordingly, the Court **GRANTS** the motion to dismiss the intentional infliction of emotional distress claim.

In sum, the Court **GRANTS** in part and **DENIES** in part the Motion to Dismiss. The Court dismisses the claims for (1) breach of oral contract; (2) promissory estoppel; (3) equitable estoppel; (4) quasi-contract/implied and constructive contract; (5) unjust enrichment/quantum meruit/restitution; (6) punitive and/or exemplary damages; (7) theft of services; (8) specific performance; and (9) intentional infliction of emotional distress. The invasion of privacy claim remains.

### D.  Motion for Judgment on the Pleadings

Gant moves for judgment on the pleadings on his claims for (1) quasi-contract/implied and constructive contract; (2) oral contract; and (3) specific performance. (Mot. for J. on the Pleadings at 1.) Gant argues that judgment on the pleadings is warranted because Ragone admitted in an unrelated Motion to Compel Plaintiff's Address that he did request Gant to write his autobiography. (*Id.*)

The Court finds that the motion for judgment on the pleadings is premature. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings are closed in a case after an answer is filed.

*Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591 (E.D. Pa. 2010). Typically, an answer to a complaint is due 21 days after the service of the summons and complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). However, when a defendant serves a Rule 12(b) motion, and "if the court denies the motion . . . the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A).

Because Ragone filed a Motion to Dismiss, Ragone's Answer is not due until 14 days after the issuance of the order deciding the Motion. Thus, the pleadings have not yet closed, and the motion for judgment on the pleadings is premature. Additionally, the Court has dismissed the claims for quasi-contract, breach of oral contract, and specific performance. As such, the Court **DENIES** the Motion for Judgment on the Pleadings.

### E.  Motion to Strike

Ragone moves to strike (1) the full Complaint and (2) paragraphs 21, 22, 25–45, 39–94, 104–20, 123–45 of Gant's Motion to Recuse. As an initial matter, the Court notes that a motion to strike may only be used to strike pleadings, not motions, affidavits, declarations, or other matters outside of pleadings. *See Vidra v. Hertz Corp.*, No. 18-2939, 2018 WL 4853311 (E.D. Pa. 2018) (denying motion to strike parties' motion and noting that "documents outside of pleadings, including motions to dismiss, are not subject to Rule 12(f)."). Accordingly, the motion is denied to the extent it seeks to strike portions of Gant's Motion to Recuse.

Further, the Court notes that a "motion to strike is not an authorized or proper way to procure the dismissal" of an entire complaint. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 391 (3d ed. 2004); *see also Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 742 (D.N.J. 2013) ("Indeed, federal courts within the Third Circuit have been highly loathe to grant motions to strike that would effectively dismiss the entire pleading.");

*Jordan v. Cicchi*, No. 10-4398, 2014 WL 2013385, at *2 (D.N.J. May 16, 2014). As such, the Court finds that a motion to strike is not an appropriate means of challenging the legal sufficiency of the Complaint. Moreover, to the extent the Motion to Strike attempts to challenge the legal sufficiency of the Complaint, the Court has already addressed these issues with its rulings on the Motion to Dismiss. Furthermore, Ragone fails to establish that any portion of the Complaint contains scandalous, impertinent, or irrelevant material. Therefore, the Motion to Strike the entire Complaint is also **DENIED**.

### F.  Motion for Sanctions

Gant moves for sanctions against Ragone, arguing that Ragone has no defense to this case, and therefore his arguments otherwise are frivolous and violate Rule 11. (Mot. for Sanctions at 1.) However, Rule 11's "safe harbor" provision provides that a party seeking sanctions must serve the motion papers on his adversary, but not file the motion for 21 days after service to give his adversary an opportunity to withdraw the offending pleading or motion. *Cannon v. Cherry Hill Toyota, Inc.,* 190 F.R.D. 147, 159 (D.N.J. 1999) (citing Fed. R. Civ. P. 11(c)(1)(A)). Gant has not certified or otherwise demonstrated that he has complied with Rule 11's safe harbor provision. Accordingly, the Motion for Sanctions is **DENIED**.

### IV.   CONCLUSION

For the reasons contained herein, (1) Defendant's Motion to Dismiss (Doc. 5) is **GRANTED IN PART AND DENIED IN PART** (2) Plaintiff's Motion to Recuse the Honorable Judge Robert B. Kugler and Transfer Case Back to State Court (Doc. 8) is **DENIED**; (3) Defendant's Motion to Strike (Doc. 20) is **DENIED**; (4) Plaintiff's Motion for Partial Judgment on the Pleadings is **DENIED**; and (5) Plaintiff's Cross Motion for Sanctions (Doc. 31) is **DENIED**. An accompanying Order shall issue.

Dated: 11/19/2020                                    /s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge